UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRIAN WAYNE MILLS,

                    Petitioner,                    Case No. 1:16-cv-318

v.                                                 Honorable Janet T. Neff

LORI GIDLEY,

                    Respondent.

_____/


## OPINION

          This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a

preliminary review of the petition to determine whether "it plainly appears from the face of the

petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."

Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be

summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court

has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4

includes those petitions which raise legally frivolous claims, as well as those containing factual

allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir.

1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must

be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations & Procedural History

Petitioner is incarcerated in the Central Michigan Correctional Facility.  He was

charged in the Berrien County with four counts of second-degree criminal sexual conduct (CSC II),

MICH. COMP. LAWS § 750.520c(1)(a) (sexual contact with a person under the age of 13).  The

Michigan Court of Appeals provided the following summary of the evidence presented at trial:

> The victim, SD, was the best friend of defendant's daughter and spent a lot
> of time at defendant's home in the summer of 2012.  On one occasion that summer,
> when SD was between 11 and 12 years old, she stayed overnight at defendant's
> home.  SD testified that she watched television with defendant and his family that
> evening; later, defendant's family went to bed, leaving SD alone with defendant in
> the television room.
>
> In her initial testimony at trial, SD stated that defendant began to rub her foot.
> Defendant told her that she was pretty and that if he were in her grade, he would date
> her.  He then moved his hand up her leg to her calf, and then to her mid-thigh.
> Feeling uncomfortable, SD got up from the couch and went into the bathroom.
> However, when she returned, defendant told her to sit back down.  She complied,
> and defendant pulled her legs toward him.  He again moved his hand up her leg, to
> the top of her thigh, and rubbed it.  He then moved his hand inside her shorts and
> rubbed the top of her "pubic area," over her underwear.  Defendant further moved
> his hand, while still inside her shorts, around to her buttocks, again over her
> underwear. Defendant then told SD to "come here," and he moved her onto his lap.
> He placed his hand underneath her shirt and rubbed her bare stomach.  He then
> reached his hand further up SD's shirt, under the underwire of her bra, and rubbed
> the bottom of her breasts.  SD demonstrated to the jury where on her body defendant
> had touched her. While sitting on defendant's lap, SD felt defendant's erect penis.
> The encounter ended when SD convinced defendant to play video games with her.
>
> As discussed further below, SD was recalled for further testimony on the
> second day of  trial.  In that testimony, she clarified that she had meant "vagina"
> when in her earlier testimony she referenced "pubic area," and that defendant had
> touched both her inner thigh and outer thigh during the encounter.
>
> After the events, SD did not immediately report the incident to anyone, but
> she eventually disclosed the sexual touching several months later to her teachers,
> who reported the incident to police.

*People v. Mills*, No. 319838, 2015 WL 1814067, at *1 (Mich. Ct. App. Apr. 21, 2015).  The jury

found Petitioner guilty as charged and he was convicted in the Berrien County Circuit Court of four

counts of second-degree criminal sexual conduct (CSC II), MICH. COMP. LAWS § 750.520c(1)(a)

(sexual contact with a person under the age of 13).  On December 2, 2013, the trial court sentenced

Petitioner to concurrent prison terms of 42 months to 15 years.

Petitioner filed an appeal as of right raising the following four claims of error:

I.      The trial judge committed reversible error and denied defendant due process
        in allowing the complaining witness to be recalled to testify after being
        excused.

II.     The trial court committed reversible error in allowing the expert witness
        Brooke Rospierski in a dual role as an expert witness and as a fact witness
        regarding her own interview to testify of the complaining witness.

III.    The trial court committed reversible error in amending the information to
        include a count of criminal sexual conduct.

IV.     The trial court committed reversible error in denying the defendant's motion
        for a directed verdict pertaining to Count I regarding sexual touching of the
        inner thigh.

(Pet. ¶9(f), ECF No. 1, PageID.2.)  The Michigan Court of Appeals issued an opinion affirming

Petitioner's conviction on April 21, 2015.  Petitioner presented the same four claims in his

application for leave to appeal in the Michigan Supreme Court, which denied his application on

December 9, 2015.

Petitioner now raises the following two grounds for habeas corpus relief:

I.      Petitioner was denied his due process rights under the Fourteenth
        Amendment where the trial court allowed the complainant to testify after
        being excused as a witness under circumstances that severely prejudiced
        [Petitioner's] right to confront the witness without being informed and/or
        instructed by the court as to missing testimony.

-3-

II.    The U.S. Supreme Court has clearly established that a cumulative effect of trial error amounts to a due process violation where the errors render the criminal defense "far less persuasive" and had a "substantial and injurious effect or influence" on the jury's verdict.

(Pet. ¶12, PageID.5-8.)

### Standard of Review

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38

-4-

(2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case." *Williams*, 529 U.S. at 407.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only

-5-

if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

## Discussion

### I.   Recall of Complaining Witness

In his first ground for habeas corpus relief, Petitioner contends that his due process rights were violated when the complaining witness was permitted to testify after being excused as a witness. Petitioner argues that allowing the complainant to be recalled was particularly damaging as she had heard the testimony of other witnesses, as well as the lawyers' arguments to the trial court regarding the testimony that she was expected to provide after retaking the stand.

The Michigan Court of Appeals rejected Petitioner's claim, stating:

> Defendant first argues that the trial court erred in allowing the prosecution to recall SD on the second day of trial, because she had not been sequestered following her initial testimony. We disagree. We review for an abuse of discretion a trial court's decision regarding the sequestration of witnesses. *People v Roberts*, 292 Mich App 492, 502-503; 808 NW2d 290 (2011). Likewise, we review for an abuse of discretion a trial court's decision whether to recall a witness. *See People v Williams*, 470 Mich 634, 643; 683 NW2d 597 (2004). An abuse of discretion occurs when the trial court "selects an outcome outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009).

> The record reflects that the trial court entered a sequestration order at the outset of the trial proceedings. However, following SD's initial testimony, she was allowed to remain in the courtroom. At the end of the first day of trial, the trial court expressed concern with its preliminary instruction to the jury regarding Count IV of the information. Specifically, that instruction had indicated that defendant had allegedly touched SD's vagina, whereas SD's testimony was that defendant had touched her "pubic area." The trial court proposed changing the wording of the final instructions. The prosecution supported the amendment and also proposed recalling SD to the witness stand so that she could explain what she had meant when she said "pubic area." Defendant objected on the basis that SD had been allowed to remain in the courtroom following her testimony and thus had heard other witnesses'

testimony and the parties' arguments regarding her initial testimony. In making this argument, defendant also noted a separate problem with SD's initial testimony: although the trial court's preliminary instruction regarding Count I alleged that defendant had touched SD's inner thigh, SD never testified specifically that defendant had touched her inner thigh, and, according to defendant, she did not touch her inner thigh when she was demonstrating to the jury. The trial court overruled defendant's objection and allowed SD to be recalled. SD subsequently testified that she had meant "vagina" when she said "pubic area" and that defendant had touched both her inner thigh and outer thigh during the encounter.

"The purposes of sequestering a witness are to prevent him from coloring his testimony to conform with the testimony of another, and to aid in detecting testimony that is less than candid." *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008). MCL 780.761 specifically addresses a trial court's authority to sequester a victim who will be called as a witness. That statute provides:

> The victim has the right to be present throughout the entire trial of the defendant, unless the victim is going to be called as a witness. If the victim is going to be called as a witness, the court may, for good cause shown, order the victim to be sequestered until the victim first testifies. The victim shall not be sequestered after he or she first testifies.

At the outset, given the plain language of MCL 780.761, the trial court did not abuse its discretion in allowing SD to remain in the courtroom after she first testified. Moreover, we conclude that the trial court did not err in allowing the prosecution to recall SD to the witness stand. SD's initial testimony was detailed; she described the progression of defendant's hand from the bottom of her leg, all the way up to the top of her thigh, then to her "pubic area" and around to her buttocks, and then eventually up her shirt to her breasts. The primary purpose for allowing SD to be recalled was simply for her to clarify what she meant when she said "pubic area." SD did so, while also clarifying that when defendant touched her thigh, he touched both her inner thigh and outer thigh. Thus, SD's initial testimony is consistent with the testimony she offered upon being recalled; there is no evidence that SD on recall conformed her testimony to another witness's testimony.[1] *Meconi*, 277 Mich App at 654. Moreover, the jury was able to fully assess whether SD's testimony was consistent because it saw her initial demonstrations as to where defendant had touched her. Further, defendant was allowed to explore on cross-examination the fact that SD had remained in the courtroom following her initial testimony and that she had heard other testimony and the parties' arguments before being recalled. Under these circumstances, we find that the trial court did not abuse its discretion in allowing SD to be recalled. *See Williams*, 470 Mich at 643.

[1]In fact, two of the three witnesses SD observed before being recalled did not even testify regarding the circumstances of the encounter, and the third witness (a police detective) testified solely to what defendant's version of events was and his subsequent investigation.

*Mills*, 2015 WL 1814067, at *1-2.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

While sequestration of witnesses is a time-honored practice designed to increase the likelihood that testimony will be candid, it is not required by the Due Process Clause.  *See Bell v. Duckworth*, 861 F.2d 169, 170 (6th Cir. 1988); *see also Mathis v. Wainwright*, 351 F.2d 489, 489 (5th Cir. 1965) (noting that the failure to sequester witnesses does not amount to a deprivation of constitutional rights); *King v. Elo*, No. 98-cv-70882, 2000 WL 791721, at *10 (E.D. Mich. May 25, 2000) (same).  Petitioner is not entitled to habeas relief unless violation of the order was "so

prejudicial as to call into question the fundamental fairness of [the] state trial." *Ashker v. Class*, 152

F.3d 863, 872-73 (8th Cir. 1998).

   Petitioner cannot meet this difficult standard. The Michigan Court of Appeals found

that SD's recall testimony was consistent with her initial testimony, and was only intended to clarify

what she meant by "pubic area," and that Petitioner had touched both her inner thigh and outer thigh.

The court of appeals also found no evidence that SD on recall conformed her testimony to another

witness's. The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160

F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v.

Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Petitioner has failed to offer any evidence that would

rebut the court of appeals' findings with regard to SD's recall testimony.

   Moreover, as Petitioner sets forth in his supporting brief, defense counsel had the

opportunity to thoroughly cross-examine SD regarding the circumstances of her recall testimony.

Defense counsel questioned SD as follows:

   Q.  You testified yesterday. Correct, [SD]?

   A.  Yes.

   Q.  And after you got done testifying you sat in the courtroom.
      Is that correct?

   A.  Yes.

   Q.  And you heard the other testimony that had been presented
      after you testified. Is that correct?

A.      Yes.

Q.      And isn't it true that there was some time that you heard some discussions between the attorneys and the Court regarding your testimony?

A.      Yes.

                        ***

Q.      You had noticed yesterday that there was a potential problem with your testimony.  Correct?

          Ms. Ceresa:    Objection.  Relevant and [sic] to whether or not she would have noticed that there was a problem and the characterization of --

          The Court:     How about this?

          Ms. Ceresa:    The characterization of it is a problem.  It's different words for the same area.

          The Court:     I understand.  Let me try this.
                              SD, did you understand that the attorneys were discussing your testimony?

A.      Yes.

                        ***

Q.      And you heard the conversation between the attorneys, is that correct, in open court.

A.      Yes.

Q:      And you testified in the preliminary examination back in February of 2013.  Is that correct?

A.      Yes.

Q:      And you used the word vagina then.  Isn't that correct.

A:      Yes.  Tr II, 89-90

-10-

(Pet. Br. in Supp., ECF No. 2, PageID.28-29.)  In addition, defense counsel argued at length to the jury during closing arguments that the victim's recall testimony was not credible because she heard the testimony of other witnesses and what was discussed in the courtroom.  Counsel stated:

> And Ms. Ceresa was correct; she was listening.  She was listening to the problems with her testimony and she got up and corrected them, or so she says she corrected it, or conformed to what she heard and knew needed to be said in order to move on.  Ladies and gentleman, you heard her first testimony.  Well, I didn't want to say vagina.  But you said vagina [Preliminary Examination Transcript at 19, 116] prior times with no problem.  And the first time she testified to you she said well, here.  And she – that's what she said.  I don't dispute that.  But then the next day it becomes more detailed after all of this.  Ladies and gentleman, she had the opportunity to sit here and listen, and watch, and hear all of these things.  And now her statement comes out different.  And I ask her why?  Why didn't you say that yesterday?  I didn't think it was important.  You didn't think it was important?  Brian Mills is charged with four counts of CSC in the second degree and that's not important to be accurate about what happened?  T III 24.

(Pet. Br. in Supp., ECF No. 2, PageID.30.)  The jury also requested and was granted the opportunity to replay the testimony of SD's original testimony.

In summary, the jury was well informed regarding Petitioner's concerns regarding SD's recall testimony and had all of the information necessary to assess SD's credibility.  Consequently, this Court cannot find that Petitioner's due process rights were violated.

## II.    **Cumulative Error**

Petitioner contends that his due process rights were violated as the result of the cumulative errors at his trial.  In arguing his claim, Petitioner not only raises the alleged error asserted in Ground I of the petition, but the other three claims that he raised on direct appeal.  While Petitioner did not raise those three claims independently in his petition, the Court will consider them for purposes of resolving his claim of cumulative error.

A.      Expert witness testimony

Petitioner maintains that the trial court committed reversible error in allowing the expert witness Brooke Rospierski to testify in a dual role as an expert witness and as a fact witness regarding her own interview with the complaining witness.  According to Petitioner's supporting brief, the prosecutor originally had listed two separate witnesses - Barb Welke to testify as an expert in the area of child sexual abuse and Brooke Rospierski to testify as to the facts of her interview with the complaining witness.  The prosecutor announced on the first day of trial that Welke was not available to testify, and, thus, Rospierski would be testifying  in a dual role.  Defense counsel objected on the ground that Rospierski's dual testimony could unfairly bolster the credibility of the complainant in a case that was largely a credibility contest.  The trial court ruled in favor of the prosecutor and allowed Rospierski to testify in a dual capacity.  Petitioner further claims that the trial court erred by not giving a specific jury instruction regarding the witnesses' dual role.

The Michigan Court of Appeals rejected Petitioner's claim on appeal, stating:

> Defendant next argues that the trial court erred in allowing Brooke Rospierski, a forensic interview specialist who interviewed SD in connection with the investigation, to testify in a dual capacity as both an expert witness and a fact witness, absent a specific instruction from the trial court informing the jury of Rospierski's dual role. Defendant did not request such an instruction at trial, and in fact approved the instructions as given. Defendant's express approval of the trial court's jury instructions waived any claim of error.  *People v Kowalski*, 489 Mich 488, 503-505 n 28; 803 NW2d 200 (2011). Nevertheless, were we to consider the issue for plain error affecting defendant's substantial rights, we would conclude that reversal is not warranted.  *Id*. at 505.  In *United States v Lopez-Medina*, 461 F 3d 724, 743 (CA 6, 2006), the principal case relied upon by defendant, the United States Court of Appeals for the Sixth Circuit stated that, where a witness testifies in two capacities, an instruction on the witness' dual roles is appropriate.  However, the court recognized that even absent an explicit instruction regarding the witness' dual role, an instruction on how to weigh expert opinion testimony will generally suffice. *Id*. In that case, the court found that the trial court had plainly erred in permitting the dual-role testimony because "no instruction on expert witness testimony was given, let alone an instruction on the agents' dual role as a fact and expert witness." *Id*.

-12-

In this case, unlike *Lopez-Medina*, the jury was properly instructed regarding the differences between lay and expert testimony, as well as how to evaluate both lay and expert testimony. Moreover, the trial court specifically instructed the jury that it was free to reject Rospierski's expert testimony. Taken as a whole, these instructions reduced any risk that the jury would conflate Rospierski's dual role or that it would give undue weight to her expert testimony, and the instructions therefore adequately protected defendant's rights. *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006).

*Mills*, 2015 WL 1814067, at *3.

As set forth above, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour*, 224 F.3d at 552. The Sixth Circuit has held that it is permissible to allow a police officer to testify both as a fact witness and an expert witness so long as an adequate cautionary instruction is given. *See United States. v. Lopez–Medina*, 461 F.3d 724, 743 (6th Cir. 2006); *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004); *United States v. Thomas*, 74 F.3d 676, 683 (6th Cir. 1996), *abrogated on other grounds by General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)). Although it may be preferable to instruct the jurors on the officer's dual roles as factual and expert witness, the giving of an instruction to the jurors on how they should weigh and evaluate expert opinion testimony, as was given in petitioner's case, is considered sufficient to protect the defendant's rights. *Lopez–Medina*, 461 F.3d at 743–44; *Swafford*, 385 F.3d at 1030; *Thomas*, 74 F.3d at 683; *see also United States v. Vasquez*, 560 F.3d 461, 470–71 (6th Cir. 2009) (district court's error in failing to give cautionary instruction regarding detective's dual role as fact witness and expert witness was harmless where jurors were generally instructed on how to weigh expert testimony and there were no other evidentiary errors).

-13-

In the instant case, the Michigan Court of Appeals found that the jury was properly instructed regarding the differences between lay and expert testimony, as well as how to evaluate both lay and expert testimony.  In addition, the court of appeals found that the trial court specifically instructed the jury that it was free to reject Rospierski's expert testimony.  As previously discussed, those facts are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429).  Petitioner does not dispute the court of appeals' characterization of the trial court's instructions on expert testimony.  Taken as a whole, the trial court's instructions were sufficient to protect Petitioner's rights.

Even if the trial court's failure to give a more specific jury instruction was considered error under *Lopez–Medina*, this Court cannot grant habeas relief on the basis of a decision of the Sixth Circuit.  The AEDPA permits habeas relief only if a state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by the Supreme Court, not by the courts of appeals. 28 U.S.C. § 2254(d)(1).  The Supreme Court has narrowly construed this requirement, holding that circuit precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced." *Lopez v, Smith*, 135 S. Ct. 1, 3 (2014).  Petitioner has failed to offer, and this Court is unaware of, any decision of the Supreme Court holding that a witness's testimony as both a fact witness and an expert witness violates the Constitution.  Consequently, the decision of the Michigan Court of Appeals is not an unreasonable application of clearly established Supreme Court precedent.

B.     Amendment of information to add a count of CSC

Petitioner asserts that the trial court committed reversible error in amending the information to include a count of criminal sexual conduct that was not supported by the evidence.

Specifically, Petitioner argues that SD's original testimony that Petitioner touched her "pubic area" was not sufficient to support his conviction for Count IV, which concerned contact with the victim's "vagina." Petitioner claims that allowing SD to testify on recall that Petitioner touched her "vagina" constituted an improper amendment of the charges against him.

The Michigan Court of Appeals found no error on the part of the trial court, stating:

Defendant next argues that the trial court abused its discretion in amending Count IV of the information. We disagree. At the outset, we disagree with defendant's characterization that the trial court amended the information. The information alleged four counts of CSC-II; each count only generally alleged that defendant engaged in sexual contact with SD, without specifying what part of SD's body was touched. It was the trial court's preliminary instructions that specifically indicated for Count IV that defendant allegedly had touched SD's vagina. As noted above, the trial court expressed concern with the preliminary instructions following SD's initial testimony, and ultimately amended the final instructions to reference, in Count IV, an alleged touching of SD's "groin and/or vagina." By doing so, the trial court did not broaden the scope of the information or otherwise alter the elements of the offense. Thus, the trial court's change in instructions did not amount to an amendment of the information. Nevertheless, even assuming an amendment occurred, reversal is not warranted.

"Both MCL 767.76 and MCR 6.112(H) authorize a trial court to amend an information before, during or after trial." *People v McGee*, 258 Mich App 683, 686; 672 NW2d 191 (2003). The only legal obstacle to doing so is "whether the amendment would cause undue prejudice to the defendant because of 'unfair surprise, inadequate notice, or insufficient opportunity to defend.'" *Id.* at 690, quoting *People v Goecke*, 457 Mich 442, 462; 579 NW2d 868 (1998). Here, as noted above, the information generally alleged four counts of "sexual contact"[2]; the specificity in the charges, as reflected in the preliminary instructions, was based on SD's preliminary examination testimony, wherein she alleged, in relevant part, that defendant had touched her vagina. Defendant was therefore sufficiently on notice of the allegations by the time of trial. Defendant's theory of defense was that he never touched SD in any inappropriate areas or for a sexual purpose, and that SD was fabricating the allegations. Thus, changing the final instructions regarding Count IV to reference defendant's alleged touching of SD's "groin and/or vagina" instead of merely her "vagina" did not result in unfair surprise, nor did it force defendant to alter his theory of defense. *See McGee*, 258 Mich App at 692-693. Further, the final instructions "adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *Martin*, 271 Mich App at 337-338.

> 2 "'Sexual contact' includes the intentional touching of the victim's … intimate parts or the intentional touching of the clothing covering the immediate area of the victim's … intimate parts . . . ." MCL 750.520a(q). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520c(f). Defendant does not contend that the conduct alleged in the information or referenced in the preliminary or final jury instructions fell outside of these definitions.

*Mills*, 2015 WL 1814067, at *3-4.

As noted by the Michigan Court of Appeals, the information was never actually amended in this case. The information generally alleged four counts of CSC-II, without specifying what parts of SD's body were touched. It was not until the trial court's preliminary instructions that each count was attached to a particular part of SD's body. Even if the information had been amended, Petitioner is not entitled to habeas corpus relief.

Indictment by a grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment. *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972). Consequently, the sufficiency of a state charging Information is generally not a proper subject for habeas corpus review. *Knewel v. Egan*, 268 U.S. 442, 446 (1925). The only requirement imposed upon state charging documents is that they inform an accused of the "nature and cause of the accusation" as required by the Sixth and Fourteenth Amendments. That is, the charging document must "give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)). The offense must be described with enough clarity to inform the accused of the crime of which he stands charged and enable him, as presumptively innocent, to prepare for trial. *Koontz*, 731 F.2d at 369. When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to

defend himself at trial.  *See, e.g.*, *Tague v. Richards*, 3 F.3d 1133, 1141–42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312–13 (8th Cir. 1988).

Petitioner clearly had fair notice of the charges against him for purposes of preparing his defense.  Petitioner does not dispute that the information charged him with four counts of CSC II and that SD testified at the preliminary examination that Petitioner had touched her in various places, including the vagina.  Consequently, Defendant was sufficiently on notice of the allegations no later than the preliminary examination.  To the extent Petitioner's claim rests on the proposition that SD's recall testimony was improper, the Court concluded above that it was not. Petitioner, therefore, cannot establish a violation of his due process rights.

C.     Denial of motion for directed verdict

Finally, Petitioner contends that the trial court committed reversible error in denying his motion for a directed verdict pertaining to Count I regarding sexual touching of SD's inner thigh.

The Michigan Court of Appeals rejected Petitioner's claim, stating:

Finally, defendant argues that the trial court erred in denying his motion for a directed verdict as to Count I of the information, which was the Count based on defendant's alleged touching of SD's inner thigh. "When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010).

To support a conviction for CSC-II based on this alleged touching, the prosecution was required to prove, beyond a reasonable doubt, that defendant intentionally touched SD's inner thigh, that the touching could reasonably be construed as being for the purpose of sexual arousal or gratification or done for a sexual purpose, and that SD was under the age of 13.  MCL 750.520c(1)(a); MCL 750.520a(f), (q). Defendant does not dispute that SD was under the age of 13 at the time of the encounter. Likewise, defendant does not dispute, and the evidence supports, that the touching could reasonably be construed as being for the purpose of sexual arousal or gratification, given SD's testimony that defendant told her she

was pretty, that he said that he would date her if he were her age, and that he had an erection while she was on his lap.

Defendant's sole contention, in arguing that a directed verdict was appropriate, is that there was insufficient evidence that he had touched SD's inner thigh. We disagree. First and foremost, defendant concedes that, upon being recalled, SD specifically clarified that defendant had touched her inner thigh. Defendant's argument thus rests on his position, which we have already rejected, that the trial court should not have allowed SD to be recalled. In light of our conclusion that the trial court did not abuse its discretion in allowing SD to be recalled, this testimony was properly considered by the trial court. *See People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001) (In ruling on a motion for directed verdict, the trial court is required to "consider in the light most favorable to the prosecutor the evidence presented by the prosecutor up to the time the motion [was] made."). Therefore, there was sufficient evidence to support this conviction.

*Mills*, 2015 WL 1814067, at *4-5.

To the extent that Petitioner relies upon state law to assert that he was entitled to a directed verdict on the assault with intent to murder charge, he fails to state a cognizable claim for habeas relief. It is well-settled that habeas relief may not be granted for alleged violations of state law. *See Estelle*, 502 U.S. at 67-68 (1991); *see also Shacks v. Tessmer*, No. 00-1062, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (unpublished) (finding no merit in petitioner's claim that the trial court erred in denying his motion for directed verdict of acquittal on first-degree murder charge based upon alleged state-law violations). Even if the Court were to construe Petitioner's claim as one of insufficient evidence, it would be without merit.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues

of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*,

506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence

supporting the conviction, in the light most favorable to the prosecution, with specific reference to

the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v.

Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

        The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both

the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two

levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated

by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the

trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a

nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence

grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

        According to the Michigan Court of Appeals, SD specifically testified during her

recall testimony that defendant touched her inner thigh. That testimony was sufficient to sustain

Petitioner's conviction for CSC II. The factual findings of the Michigan Court of Appeals are

entitled to presumption of correctness. See *Lancaster*, 324 F.3d at 429. Petitioner does not dispute

the factual findings of the Michigan Court of Appeals; rather, he argues that the trial court erred by

allowing SD to be recalled.  As set forth above, it was not error for the trial court to allow SD to be recalled for purposes of clarifying her testimony.[1]

D.     Cumulative error

Because the individual claims asserted by Petitioner are without merit, he cannot show that the cumulative effect of the alleged errors violated his constitutional rights.  *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (habeas petitioner cannot simply add individual meritless claims to show cumulative error).  Further, although Sixth Circuit precedent supports the proposition that errors that are harmless in isolation may require reversal when taken together, *see United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000); *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.1983), no United States Supreme Court precedent recognizes the cumulative error doctrine.

Under the AEDPA, a court only may grant habeas relief based on a misapplication of Supreme Court law.  *Bailey*, 271 F.3d at 655.  Both because he has failed to demonstrate any errors to aggregate and because his claim depends on non-Supreme Court precedent, Petitioner is not entitled to habeas corpus relief on this ground.  *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004).

---

[1]The Court further notes that Petitioner's claim may be subject to the "concurrent sentence doctrine."  The concurrent sentencing doctrine invests the Court with discretion to decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction.  *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n. 3 (6th Cir. 1989).  Although the doctrine has its roots in direct appeals, the federal courts routinely apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody.  *See*, *e.g.*, *Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991).  In habeas actions, as in direct review, the exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is allowed to stand.  *Williams v. Maggio*, 714 F.2d 555 (5th Cir. 1983).

In this case, Petitioner is serving four concurrent prison terms of 42 months to 15 years for his four CSC II convictions.  The present issue challenges only one of the convictions.  Thus, even if his conviction for Count I was vacated, Petitioner still would be required to serve three concurrent terms of 42 months to 15 years.  Accordingly, the relief sought by Petitioner, release from prison, would not be available even if he was successful on this claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   October 7, 2016              /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District